UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER HUDSON,

        Plaintiff,

v.

CITY OF HIGHLAND PARK,
MICHIGAN, et al.,

        Defendants.

_____/

Case No. 2:16-cv-12369

HON. STEPHEN J. MURPHY, III

**OPINION AND ORDER
GRANTING DEFENDANTS HIGHLAND PARK AND
HILLMAN'S MOTION FOR SUMMARY JUDGMENT [121], GRANTING
DEFENDANT JACKSON'S MOTION FOR SUMMARY JUDGMENT [123],
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [124]**

After Highland Park terminated his employment as a firefighter, Plaintiff filed suit against Defendants City of Highland Park, Highland Park Fire Chief Derek Hillman, then-Highland Park Human Resources Director Makini Jackson, the Leona Group, LLC, and Carmen Willingham. On April 7, 2017, Plaintiff filed an amended complaint. ECF 61. Defendants Leona Group, LLC and Carmen Willingham were terminated on June 30, 2017, and October 2, 2017, respectively. *See* ECF 72. On July 25, 2018, Defendants Highland Park and Hillman filed a motion for summary judgment. ECF 121. On July 27, 2018, Defendant Jackson filed a motion for summary judgment. ECF 123. On July 27, 2018, Plaintiff filed a motion for summary judgment. ECF 124. The Court is fully familiar with the case, has reviewed the briefs and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f). For the reasons below, the Court will grant the Defendants' motions and deny Plaintiff's motion.

1

# BACKGROUND[1]

The following claims against Defendants Highland Park, Hillman, and Jackson remain: (1) a Title VII[2] claim for disparate treatment against Highland Park; (2) a Title VII claim for hostile work environment against Highland Park; (3) a Title VII claim for wrongful discharge against Highland Park; (4) a 42 U.S.C. § 1983 claim for deprivation of the right to free speech against all remaining Defendants;[3] (5) a § 1983 claim for denial of due process against all remaining Defendants; and (6) a Michigan state law breach-of-contract claim for failure to provide earned compensation upon termination against Highland Park. *See* ECF 61.

Plaintiff's claims stem from his employment, beginning in 2003, and his 2015 termination from the Highland Park fire department. *See id.* at 1295–1310. Plaintiff is a Christian and holds various moral opinions; he also wears a cross and says grace before meals. *Id.* at 1296. Coworkers made comments or gestures that Plaintiff perceived as attacking him for his Christian beliefs. *Id.* at 1300. For example, they made remarks about God and Jesus Christ that Plaintiff perceived as blasphemous, including that Jesus had sex with the harlot in the Bible. *Id.* Plaintiff's coworkers made fun of the cross he wore,

---

[1] The Court will recount the facts in the light most favorable to Plaintiff. The fact summary does not constitute a finding of fact.

[2] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

[3] The free speech claim applies to Defendants Hillman and Jackson in their official capacities only. Defendant Jackson requests the Court find that she is entitled to qualified immunity as to Count IV. ECF 123, PgID 3138; ECF 129, PgID 4814. Although the Court understands that Jackson's counsel was not her counsel at the time Defendants' motion for judgment on the pleadings was filed, *see* ECF 62, the Court already determined that Jackson is not entitled to qualified immunity on the free speech claim. Similarly, Defendant Hillman requests qualified immunity, ECF 121, PgID 2851, even though the Court already ruled on the issue. A motion for summary judgment is not a proper means to file a motion for reconsideration.

asked him whether he had fallen asleep while he prayed before eating, and asked him if it was against his religion to work on his birthday. *Id.* Plaintiff's colleagues never discouraged him from saying prayers before meals. ECF 121-2, PgID 2935–36.

Plaintiff complains that the other firemen viewed sexually suggestive material and had sex at the fire station.[4] *Id.* at 1296–97. Plaintiff's coworkers allegedly ignored cleaning and maintenance duties at the fire station and missed fire runs. *Id.* at 1298.

In addition to alleging misconduct by his fellow firefighters, Plaintiff asserts wrongdoing by Defendants Hillman and Jackson. Defendant Hillman failed to reprimand the other firemen for engaging in sexual behavior. ECF 61, PgID 1300–01. Defendant Jackson allegedly had sex with a fireman in an automobile during work hours. *Id.* at 1301. Plaintiff never reported the firemen's sexual behavior to either Hillman or Jackson. ECF 121-2, PgID 2887–88 (testimony of Plaintiff). Plaintiff also never received a write-up or a bad assignment while employed by Defendant Highland Park. *Id.* at 2921, 2940.

During Plaintiff's employment, Defendants became concerned with two discrepancies in his timesheets: (1) Plaintiff claimed fire engine operator ("FEO") hours despite not holding the requisite rank ("FEO discrepancy"), and (2) Plaintiff recorded time working for the fire department when Plaintiff recorded some of the same hours ("double-dipping") working for a school ("double-dipping discrepancy"). ECF 61, PgID 1302–07. Plaintiff acknowledges the discrepancies, but maintains that he had legitimate reasons

---

[4] The allegedly sexually suggestive material ranged from gratuitous scenes in Netflix shows—where "you might see a butt" or more—to magazines like *Playboy* and *Hustler* to a video of a fellow firefighter whose towel was taken away in the shower as a "practical joke[]." ECF 121-2, PgID 2933–35.

for logging them. *Id.* at 1302–03 (regarding FEO discrepancy), 1303–04 (regarding double-dipping discrepancy).

On May 20, 2015, Hillman accused Plaintiff of the FEO discrepancy and sent him home pending further investigation. ECF 61, PgID 1303; ECF 121, PgID 2829. On May 28, 2015, Defendants held a hearing to discuss both discrepancies with Plaintiff. ECF 123-1, PgID 3152. Plaintiff believed, however, that the hearing related only to the FEO discrepancy. ECF 61, PgID 1307. During the hearing, Plaintiff invoked his *Garrity* rights and did not answer any questions. ECF 121, PgID 2830; *see generally Garrity v. New Jersey*, 385 U.S. 493 (1967) (holding that law enforcement officers and other public employees have the right to be free from compulsory self-incrimination); *see also* ECF 123-1, PgID 3154 (Jackson's testimony that she did not recall Plaintiff responding to the assertions at the meeting); ECF 128, PgID 4552 (Plaintiff noting that he exercised his right to remain silent). Plaintiff was suspended on May 28, 2015 for both the FEO and double-dipping discrepancies. ECF 121-4, PgID 3032 (Hillman deposition).

On June 1, 2015, the Police Officers Association of Michigan ("POAM") filed a grievance on Plaintiff's behalf, seeking redress for his suspension. ECF 61, PgID 1308. The grievance was denied at Step 1. ECF 128-10, PgID 4757. On June 9, 2015,[5] Highland Park discharged Plaintiff from employment. *See* ECF 129-7, PgID 4905. The union then

---

[5] Although Plaintiff's amended complaint reads, "June 10," a contemporaneous email sent by Plaintiff shows that Highland Park terminated Plaintiff on June 9, 2015.

updated the grievance to reflect Plaintiff's termination. ECF 61, PgID 1308. The Step 2 hearing was reset for June 25, 2015.[6] *See* ECF 121-5, PgID 3050.

On June 22, 2015, Plaintiff's colleagues elected new union representatives. *Id.* at 1309. On June 24, 2015, the POAM notified Highland Park of its immediate withdrawal from representing the firemen. ECF 128-15, PgID 4790. That same day, Jackson apparently canceled the Step 2 grievance meeting scheduled for June 25. *Id.* Jackson explained that the change in union representatives prompted the cancellation. ECF 121-5, PgID 3053. The president of the local union officers then sent an email to Jackson requesting a meeting on July 10, 2015 to settle Plaintiff's grievance. *See* ECF 123-1, 3305–06. She replied that they could address the grievance on July 8, 2015. *Id.* at 3306; *see also* ECF 123, PgID 3135.

Mitch Erwin, a member of the local union leadership, testified that Plaintiff's meeting with Jackson was rescheduled to July 8, 2015 and that Plaintiff objected due to receiving only one day's notice. ECF 121-6, PgID 3089. According to Mr. Erwin, Plaintiff demanded that his grievance be elevated to arbitration. *Id.* Plaintiff's testimony corroborates Mr. Erwin's testimony. *See* ECF 128-2, PgID 4592–93; ECF 129-3, PgID 4870–71; ECF 129-7. Mr. Erwin believed that Plaintiff needed to exhaust the grievance procedure before going to arbitration. ECF 121-6, PgID 3089. Plaintiff never contacted Mr. Erwin to request a rescheduled meeting with Defendant Jackson. *Id.*

On July 7, 2015, International Association of Fire Fighters ("IAFF"), the new bargaining agents, abandoned Hudson's grievance. ECF 123, PgID 3135; ECF 61, PgID

---

[6] There was a June 9, 2015 meeting scheduled between Jackson and the union about Plaintiff's grievance. ECF 121-5, PgID 3049. The record is not well-developed about that meeting, but, in any event, it was reset for June 25, 2015.

1309. Jackson explained that she did not arbitrate Plaintiff's suspension or discharge because the union, and not the individual employee, needed to pursue arbitration under the collective bargaining agreement. ECF 121-5, PgID 3053. Plaintiff then filed a complaint alleging that his rights were violated.

## STANDARD OF REVIEW

The Court may grant summary judgment "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to show that a fact is, or is not, genuinely disputed, both parties are required to either "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering cross-motions for summary judgment, a court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003) (citation omitted). But the Court may not judge the evidence or make findings of fact. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435–36 (6th Cir. 1987).

The moving party has the burden of showing that no genuine issue of material fact exists. *Id.* at 1435. Once the moving party carries the initial burden of demonstrating that

there are no genuine issues of material fact, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

I.   <u>Defendants' Motions for Summary Judgment</u>

The Court will discuss both motions for summary judgment by Defendants together because they involve the same or similar factual allegations.

*A. Title VII Disparate Treatment (Highland Park)*[7]

Plaintiff alleges that Highland Park violated Title VII by subjecting him to disparate treatment. *See* ECF 61, PgID 1310.

Disparate treatment occurs when an employer "simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n.15 (1977). When a plaintiff presents only circumstantial evidence of discrimination, a court examines the claim under the *McDonnell Douglas*[8] burden-shifting approach. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865–66 (6th Cir. 2003)). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of presenting a prima facie case of unlawful discrimination. *Id.* The burden then shifts to the employer to offer a legitimate, non-discriminator explanation for its actions. *Id.* Finally,

---

[7] Plaintiff brings two counts, labeled "Count I . . . Disparate Treatment, Hostile Work Environment" and "Count II, Disparate Treatment, Suspension and Discharge." ECF 61, PgID 1310. But disparate treatment, hostile work environment, and wrongful discharge constitute three different claims under Title VII. The Court will therefore address each claim separately.

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

the burden shifts back to the plaintiff to show that the employer's explanation is pretext. *Id.* To show pretext, a plaintiff must persuade the court that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

To make his prima facie showing of disparate-treatment religious discrimination, Plaintiff must demonstrate: (1) membership in a protected class; (2) that he suffered from an adverse employment action; (3) that he was qualified for the position; and (4) that a person who was outside the protected class and similarly situated to Plaintiff in all relevant respects was treated better than he was. *Clay*, 501 F.3d at 703 (citations omitted).

The parties do not dispute that Plaintiff satisfies the first three prongs of his prima facie showing. *Compare* ECF 121, PgID 2837–39 *with* ECF 125, PgID 3965–67. Plaintiff fails, however, to establish the fourth prong of the prima facie case. Plaintiff alleges that Highland Park neither suspended nor terminated a non-Christian—Mr. Baetz[9]—for double-dipping on time sheets. ECF 61, PgID 1314–15. Plaintiff asserts that the alleged disparate treatment satisfies the fourth prong of the prima facie case. But Mr. Baetz was not accused of both a double-dipping discrepancy and an FEO discrepancy. Thus, Mr. Baetz was not similarly situated to Plaintiff in all relevant respects. Plaintiff failed to carry his burden of persuasion. His claim for Title VII disparate treatment does not survive summary judgment.

B. *Title VII Hostile Work Environment (Highland Park)*

"The *McDonnell Douglas* burden-shifting approach also applies to hostile-work-environment claims." *Clay*, 501 F.3d at 706. To establish a prima facie case, Plaintiff must

---

[9] Plaintiff's complaint spells the name "Bates." The correct spelling is "Baetz." *Compare* ECF 61 *with* ECF 54, PgID 789.

show: (1) membership in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was religiously based; (4) the harassment unreasonably interfered with his work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability. *See id.* (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). "In determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment," the Court "must consider the totality of the circumstances." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotations and citations omitted).

Plaintiff alleges that Highland Park violated Title VII by subjecting him to a hostile work environment. ECF 61, PgID 1310. Specifically, Plaintiff alleges that Highland Park "discriminat[ed] against Hudson with respect to his compensation, terms, conditions, or privileges of employment, because of his religion." *Id.* at 1311. He maintains that the alleged harassment caused him humiliation, depression, anxiety, and distress. *Id.*

Plaintiff fails to satisfy the third, fourth, and fifth prongs of a hostile-work-environment prima facie case. First, he fails to allege any facts showing that the sexual

behavior was harassment against him based on his religion. *Cf. Bethea v. Equinox Fitness Club*, 544 F. Supp. 2d 398, 400 (S.D.N.Y. 2008) (holding that male employees failed to show that witnessing gym members' sexual activity in men's locker rooms was harassment based on the employees' sex).

Second, Plaintiff fails to demonstrate that the harassment was sufficiently severe or pervasive to constitute a hostile work environment. To the extent that Plaintiff alleges that the occurrence of sexual activity among coworkers was harassment, the occurrence of such behavior is insufficiently severe. Sexual activity among coworkers, or the failure to correct such sexual behavior, does not permeate the workplace "with discriminatory intimidation, ridicule, and insult" sufficient to create an abusive working environment. *Harris*, 520 U.S. at 21. *See, e.g.*, *Kriescher v. Fox Hills Golf Resort & Conf. Ctr.*, 384 F.3d 912, 914–15 (7th Cir. 2004) (upholding district court ruling on summary judgment that sexually permissive workplace atmosphere was not sufficiently hostile). Similarly, the alleged policy of concealing sexual activity among employees is not severe enough to create a hostile work environment. *See id.*

Further, Plaintiff fails to show that his coworkers' alleged sexual activity altered the terms of or adversely affected the conditions of his employment. Plaintiff received similar work assignments and did not receive an unusual number of write-ups. ECF 121-2, PgID 2921, 2940 (Plaintiff's deposition).

Moreover, Plaintiff cannot show employer liability. Plaintiff advances two theories of Highland Park's liability: (1) a theory of respondeat superior for negligent supervision of employees and (2) a policy or practice of "concealing sexual misconduct by its employees." ECF 61, PgID 1311. But Plaintiff never reported his colleagues' sexual behavior or alleged

failure to discharge their duties to his supervisors. ECF 121-2, PgID 2887–88; ECF 121-3, PgID 3018, 3020. Plaintiff never alleged that Hillman or Jackson made or witnessed the remarks.[10] *See* ECF 121-2, PgID 2903. Because Plaintiff did not complain of his coworker's isolated comments about Jesus Christ, Plaintiff's cross, and Plaintiff's pre-meal prayer to Hillman or Jackson, Plaintiff cannot attribute knowledge to them or to Highland Park. *See* ECF 61, PgID 1301; ECF 121-2, PgID 2943–44 (Plaintiff's deposition); *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009) (holding that the plaintiff failed prima facie case by not showing employer knew or should have known of harassment). Plaintiff here fails to show employer liability, the fifth prong of the prima facie case. Plaintiff's hostile-work-environment claim therefore does not survive summary judgment.

## C. Title VII Wrongful Discharge (Highland Park)

To the extent Plaintiff's Count II claim—labeled "disparate treatment, suspension and discharge"—pleads retaliation, it cannot survive summary judgment.

Plaintiff alleges that Highland Park violated Title VII by wrongfully discharging him from employment. ECF 61, PgID 1312. He alleges that both Hillman and Jackson knew of his beliefs concerning sexually suggestive material and sexual behavior and that Hillman and Jackson were "predisposed to discriminate against persons who believed and espoused Christian beliefs about pornography and illicit sexual relations." *Id.* at 1313. Plaintiff argues that Highland Park is vicariously liable for Hillman and Jackson's actions suspending and terminating him. *Id.* at 1315.

---

[10] At most, Plaintiff concludes that Hillman was aware of the remarks because he was "present at the fire station." ECF 61, PgID 1300. He does not allege that Hillman actually witnessed or that Plaintiff told him of the alleged remarks about Jesus Christ or Plaintiff's cross or prayer. *But see id.* at 1301 (alleging that Hillman heard remarks—not about religion—and laughed).

Title VII prohibits an employer from discriminating against an employee who "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C. § 2000e-3(a). Courts analyze Title VII retaliation claims under the *McDonnell Douglas* framework. *E.g.*, *Laster v. Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). To establish a prima facie Title VII retaliation claim, Plaintiff must show: (1) he engaged in activity protected by Title VII, (2) Defendant knew Plaintiff engaged in the protected activity, (3) Defendant took action materially adverse to Plaintiff, and (4) the protected activity caused the materially adverse action. *Id.* (citation omitted). The last prong requires but-for causation. *Id.* at 731 (citation omitted).

Plaintiff's statements of his moral beliefs about sexual matters do not constitute protected activity under 42 U.S.C. § 2000e-3. But even if he did engage in protected activity, Plaintiff fails to show that Highland Park knew Plaintiff made statements about his moral beliefs. Plaintiff never reported the sexual activity or expressed his moral concerns about the behavior to his supervisors. ECF 121-2, PgID 2887–88 (Plaintiff's deposition). Further, Plaintiff fails to establish that but for Plaintiff's criticism of pornography and sexual matters, Highland Park would not have terminated Plaintiff. To the extent Plaintiff pleads retaliation, his claim does not survive summary judgment.

*D.  Free Speech Deprivation (Hillman, Jackson, Highland Park)*

Plaintiff alleges that Defendants Hillman, Jackson, and Highland Park deprived him of his right to freedom of speech. ECF 61, PgID 1315. According to Plaintiff, Defendants suspended and terminated him from employment because he had spoken to other firemen about immoral conduct in the fire station. *Id.* at 1316. He alleges that Defendants violated his First Amendment rights by taking adverse employment action

against him. *Id.* at 1317. According to Plaintiff, only persons with Hillman's rank and above could suspend and discharge Plaintiff. *Id.* at 1316.

> 1. Defendant Highland Park cannot be held liable for the alleged free speech deprivation.

Local governments cannot be held liable under a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). A municipality can be liable under 42 U.S.C. § 1983 only if its policy or custom—whether made by its lawmakers or by those whose "edicts or acts may fairly be said to represent official policy"—inflicts injury. *Id.* at 690, 694. Local governments can be sued for constitutional deprivations pursuant to governmental custom even if the custom was not formally approved. *Id.* at 690–91. If the custom was not formally approved, Plaintiff must "prove the existence of a widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." *Cash v. Hamilton Cty. Dep't of Adult Prob.*, 388 F.3d 539, 543 (6th Cir. 2004) (quoting *Monell*, 436 U.S. at 691).

"A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

When a municipal liability claim is premised on an "inaction theory," Plaintiff must prove: (1) the existence of a clear and persistent pattern of violating federal rights; (2) Defendants had notice or constructive notice; (3) Defendants' tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act amounted

to an official policy of inaction, and (4) that Defendants' custom was the direct causal link for the constitutional deprivation. *Doe v. Claiborne Cty. Ex rel. Claiborne Cty. Bd. Of Educ.*, 103 F.3d 495, 508 (6th Cir. 2007).

Plaintiff argues that Highland Park's policy was "to conceal the sexual immorality and misconduct of City employees and officials." ECF 61, PgID 1317. Defendant, in turn, argues that Plaintiff has failed to show any municipal policy that caused a constitutional violation. ECF 121, PgID 2831.

Plaintiff's first amendment claim against Highland Park cannot survive. First, Plaintiff alleges that Highland Park violated his First Amendment rights by terminating him pursuant to Highland Park's alleged policy of concealing sexual activity among employees. Plaintiff has not put forth any evidence suggesting that Highland Park had a policy of sanctioning employees for reporting coworkers' sexual activity. *See, e.g.*, *Ely v. Dearborn Heights Sch. Dist. No. 7*, 150 F. Supp. 3d 842, 855–56 (E.D. Mich. 2015) (finding that plaintiff—who did not provide evidence of a school district's policy, custom, or practice of sanctioning employees for reporting school safety hazards—failed her burden under *Monell*).

Second, even under an inaction theory, Plaintiff's claim against Highland Park fails. Plaintiff fails to show that there was a clear and persistent pattern of violations of federal rights. Plaintiff does not indicate that Highland Park mistreated other employees who spoke about workplace sexual activity. *See, e.g.*, *Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 577–78 (S.D. Ohio 2009) (finding that plaintiffs failed first prong of *Doe* test when they alleged defendant's failure to investigate but did not produce evidence of a pattern of similar discriminatory or retaliatory activity in other cases).

Further, Plaintiff has failed to show that he suffered a constitutional violation as a result of the actions of Hillman or Jackson that could impose liability on Highland Park. Plaintiff has alleged that a person with Hillman's rank or above can suspend or terminate Plaintiff. *See* ECF 61, PgID 1316. But Plaintiff has failed to show causation between Hillman's investigation, suspension, and termination of Plaintiff and any deprivation of free speech or religion. *See Burgess*, 735 F.3d at 479 (finding that defendant's after-the-fact approval of an investigation, which did not itself cause or continue a harm against plaintiff, was insufficient to establish a claim under *Monell*). For these reasons, Highland Park cannot be held liable for the alleged free speech deprivation.

2. Defendants Hillman and Jackson cannot be held liable for the alleged free speech deprivation.

The Court has already found that Hillman and Jackson are entitled to qualified immunity in their individual capacities as to the free speech claim. ECF 72.[11] Plaintiff does not seek injunctive relief against them. *See* ECF 61, PgID 1333. Any suit for damages against officials in their official capacity is a suit for damages against their government employer. *See Monell*, 436 U.S. at 690 n.55. As explained, Highland Park cannot be held liable on the free speech claim. The free speech claim against Hillman and Jackson in their official capacities therefore cannot survive. For the foregoing reasons, Plaintiff's free speech claim does not survive summary judgment.

---

[11] Plaintiff's response to Defendants Hillman and Jackson's motions for summary judgment on the free speech claim merely attempts to reargue whether Hillman and Jackson are entitled to qualified immunity.

### E. Deprivation of Due Process (Hillman, Jackson, Highland Park)[12]

Plaintiff alleges that Defendants Hillman, Jackson, and Highland Park deprived him of due process under the Fourteenth Amendment. ECF 61, PgID 1318. Plaintiff argues that under a collective bargaining agreement between Highland Park and the Police Officers Association of Michigan ("POAM Agreement"), he had a property interest in continued employment unless there was good cause to discharge him. *Id.* According to Plaintiff, the POAM initiated a grievance concerning Plaintiff's suspension for the FEO discrepancy, but when he met with Hillman and Jackson regarding the FEO discrepancy they accused him of the double dipping discrepancy. *Id.* at 1318–19. Plaintiff argues that Hillman and Jackson discharged Hudson without notice of the charges against him and an opportunity to present his side of the story. *Id.* at 1319. According to Plaintiff, the firemen elected new local union officers on June 22, 2015, the POAM terminated its representation, and the new union officers abandoned Plaintiff's grievance on July 7, 2015. *Id.* at 1309, 1319.

Defendant Jackson argues that at all relevant times, Hudson's terms and conditions of employment were subject to two collective bargaining agreements: the POAM Agreement, effective from July 1, 2010 through June 30, 2015, and the IAFF Agreement, effective from July 1, 2015 through June 30, 2017. ECF 123, PgID 3132–33 (citing ECF 123-1, PgID 3180–3221, 3223–47), 3135. Both agreements allow Highland Park to terminate firefighters for just cause. ECF 123-1, PgID 3187, 3227. And, according

---

[12] On November 8, 2018, Plaintiff filed a motion to dismiss the due process claim against Hillman in his individual capacity. ECF 139. On November 13, 2018, Highland Park and Hillman replied, apparently concurring with the dismissal of the claim. ECF 140. On the same day, Plaintiff withdrew the motion to dismiss, apparently because the concurrence was not on the terms Plaintiff wanted. ECF 141.

to Highland Park Fire Department's policy for disciplining firefighters, falsification of time records is a terminable offense. *Id.* at 3250.

Both collective bargaining agreements contained grievance procedures: Step 1 and Step 2 had to occur before arbitration. *Id.* at 3188–89, 3227–28.[13] Under the POAM Agreement, the right to proceed to arbitration belonged to the union. *Id.* at 3189. Similarly, under the IAFF Agreement, either Highland Park or the union had the right to demand arbitration. *Id.* at 3228. Under the IAFF Agreement, the union had the power to act for the employee at all levels of the grievance procedure. *Id.* at 3227.

The record contains an investigative report of Hudson's alleged falsification of his timesheets. *Id.* at 3256. The report states that Plaintiff's FEO discrepancy and double-dipping discrepancy were both investigated. *Id.* According to the report, Plaintiff falsified more than 123 hours. *See id.*

For public employees, "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–48 (1985). When an employee has a property right in continued employment, due process requires the state to provide pre-termination "notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer." *Buckner v. Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990) (citation omitted).

Plaintiff argues that Highland Park is liable under two theories. First, according to Plaintiff, Hillman and Jackson were Highland Park's authorized decision-makers, and they

---

[13] Under the IAFF agreement, an additional step had to occur before arbitration could take place. *See* ECF 123-1, PgID 3228.

took action that deprived him of due process. ECF 61, PgID 1321. Second, Plaintiff maintains that the termination implemented Highland Park's policy of concealing the sexual immorality and misconduct of its employees. *Id.*

For the same reasons explained in the Court's analysis of Plaintiff's free speech claim, Highland Park cannot be liable under Plaintiff's second theory. Plaintiff fails to show that there was a clear and persistent pattern of unlawful activity because he does not indicate that Highland Park mistreated other employees who spoke about workplace sexual activity. And, most evidently, Plaintiff fails to demonstrate causation between a purported Highland Park policy of concealing its employees' sexual activity and any due process violation.

Furthermore, Highland Park did not violate due process in its handling of the discrepancies, under Plaintiff's first theory of liability. Although the parties' development of the timeline leaves much to be desired, the evidence shows that Defendants' actions did not deprive Plaintiff of due process. Plaintiff admits that before he was terminated he remained silent when presented with allegations that he falsified his timesheets. *See* ECF 128, PgID 4552. There is also evidence that the POAM, which had the right to proceed to arbitration, abandoned Plaintiff's grievance after his termination. Plaintiff's criticism of the abandonment of his grievance is more appropriately leveled at his union representatives—not the defendants here.

And Plaintiff's due process claims cannot survive summary judgment. Plaintiff contends that the union failed to adhere to the grievance procedural timeline detailed in the collective bargaining agreement. But Defendants are not to blame for the union's decision to proceed under a different timeline. To the extent that Plaintiff complains of his

colleagues' election of different union representatives and the POAM's termination of representation of the firemen, ECF 128, PgID 4552–53, Defendants are simply not to blame for POAM's actions or the election held by Plaintiffs' former colleagues.

To the extent Plaintiff complains of Jackson's cancellation of the initial Step 2 grievance conference one day after the POAM's withdrawal, his argument is unconvincing. *See* ECF 128, PgID 4553. Jackson reasonably concluded that there was no bargaining agent because the POAM withdrew. Regardless of any timing oddities, Plaintiff was not entitled to arbitration.[14] *Compare* ECF 128, PgID 4554 (averring that Plaintiff was entitled to arbitration) *with* ECF 123-1, PgID 3189, 3228 (providing collective bargaining agreements' language on union's entitlement to arbitration).[15]

The record shows that Plaintiff was not deprived of pre-termination notice. On May 20, 2015, Hillman informed Plaintiff of the FEO discrepancy and sent him home pending further investigation. ECF 61, PgID 1303; ECF 121, PgID 2829. There is evidence that Jackson and Hillman presented him with the charges on May 28, 2015. ECF 123-1, PgID

---

[14] Plaintiff avers that he sent an email after July 8, 2015 to Jackson requesting arbitration. ECF 128, PgID 4556. But again, under no collective bargaining agreement was Plaintiff ever entitled to pursue arbitration on his own behalf.

[15] Plaintiff argues that under the POAM Agreement, he was entitled to arbitration, citing the language: "In the event the grievant and/or the Union does not appeal a grievance from one step to another within the time limits provided, the grievance will be considered as settled on the basis of the last answer." ECF 128, PgID 4561 n.5. But Plaintiff's argument is unavailing, as it ignores the requirements for each of the steps. Step 1 involves the *employee* presenting a grievance to the employer; Step 2 involves the Union's ability to put the grievance in writing and request a meeting. The language Plaintiff cites follows the description of Step 1 and Step 2, indicating that the "considered as settled" language applies to either Step 1 or Step 2, regardless of who initiated Step 1 (the employee) or Step 2 (the union). Step 3, arbitration, clearly states that the union has the ability to seek arbitration. ECF 128-8, PgID 4719–20. Because Plaintiff's position is inconsistent with the terms of the collective bargaining agreement, his citation to Mich. Comp. Laws § 423.11 is inapposite. *See* ECF 128, PgID 4561–62.

3152. It is undisputed that Plaintiff elected not to speak at that meeting. *See id.* at 3154; ECF 128, PgID 4552. The May 28, 2015 meeting occurred before he was discharged. Plaintiff was therefore offered pretermination notice and an opportunity to speak before he was terminated.

And Plaintiff was not deprived of post-termination administrative proceedings. *See Loudermill*, 470 U.S. at 538. The collective bargaining agreements each set out grievance procedures. Indeed, in June 2015, the union amended Plaintiff's grievance to reflect his termination. Defendants offered Plaintiff a meeting with Jackson on July 8, 2015, but he declined and insisted on arbitration. The local union officers did not pursue Plaintiff's grievance and dismissed Plaintiff's grievance on July 7, 2015. ECF 61, PgID 1309. Ultimately, there is evidence that Plaintiff had access to post-termination administrative proceedings through his union, but after he refused to meet with Jackson at Step 2, the union abandoned his grievance.

The record shows that Plaintiff was afforded due process. Plaintiff's due process claim against Hillman, Jackson, and Highland Park does not survive summary judgment.

II.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks summary judgment on his due process claim and on his breach-of-contract claim.

A.  *Deprivation of Due Process (Hillman, Jackson, Highland Park)*

As explained in the analysis of Defendants' motions for summary judgment, the Court finds in favor of Defendants on Plaintiff's due process claims.

Plaintiff argues that the repudiation of grievance procedures was a policy, practice, or custom of Highland Park. ECF 124, PgID 3333. But the union representatives who allegedly failed to follow the grievance procedures' timelines were not acting under color of

state law. And, as explained *infra*, the Court finds no constitutional violation in Jackson's alleged cancellation of the June 25, 2015 Step 2 meeting for lack of bargaining representative or her offer to reschedule the meeting. *See Cash*, 388 F.3d at 543 (requiring both a constitutional violation and action under color of state law for municipal liability).

## B. *Breach of Contract (Highland Park)*

Plaintiff argues that pursuant to the POAM Agreement, he was entitled to regular compensation of $11.1154 per hour and additional FEO pay of $4.76 per hour for all FEO time and FEO drive time. ECF 61, PgID 1322. According to Plaintiff, Highland Park has breached its employment contract with him by failing to pay him for his time between May 11, 2015 and May 24, 2015. *Id.* As the Court will explain below, the Court will decline to exercise jurisdiction over the state law claim.

## III. Pendent State Jurisdiction

Until now, the Court has exercised pendent state jurisdiction over Plaintiff's breach-of-contract claim. But the statute governing supplemental jurisdiction provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which is has original jurisdiction[.]" 28 U.S.C. § 1367(c). District courts should generally decline to exercise supplemental jurisdiction over state law claims when all federal law claims have been dismissed from the case before trial. *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims.").

The Court will decline to retain pendent jurisdiction over Plaintiff's breach-of-contract claim. The claim involves citizens of the same state, so the Court does not have

original subject matter jurisdiction over it. And the interests of judicial economy do not override the presumption against retention. *See Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). Even after more than two years of litigation, the record regarding the breach-of-contract claim is woefully underdeveloped.[16] The Court will therefore dismiss the claim without prejudice.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants Hillman and Highland Park's motion for summary judgment [121] is **GRANTED** as to Counts I, II, III, and IV.

**IT IS FURTHER ORDERED** that Defendant Jackson's motion for summary judgment [123] is **GRANTED** as to Counts III and IV.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment [124] is **DENIED**.

**IT IS FURTHER ORDERED** that Count V is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **CLOSE** the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 30, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 30, 2018, by electronic and/or ordinary mail.

s/ David Parker
Case Manager

---

[16] In his motion for partial summary judgment, Plaintiff points out that Highland Park has produced no evidence to controvert his breach-of-contract claim. ECF 124, PgID 3337. Highland Park counters that Plaintiff has not provided proof of breach of contract. ECF 127, PgID 4276. Perplexingly, Plaintiff never replied to Highland Park's argument. *See generally* ECF 132. The parties' filings since the amended complaint have practically ignored the claim.